Forty years, Mr. McCoy. My name is Richard McCoy. I work in the 13th year's office. I was one of Mr. Graham's co-authors. And I'm here before McCoy with multiple themes. I'm trying to take this through to a logical spot. I think the second priority for me before McCoy's story is that things are diverse. I'm trying to focus on purpose. That is, for me, something that's responsible. I'm trying to focus on purpose. And it has to do with how much of a task it is, how many pieces of research there is, how much research there is in this country, how much research there is in all of this country, and how much research there is in all of this country. Now, it has to do with self-statement and promise. And I think that's one of the factors that we have to talk about in this. We've had a couple of discussions with some of you. Some of us have written a song just a few years ago here. We're, I guess, going to mention the community that we work with. I know that this is just one of three, but I'll still recommend the second, third, and actually fourth. And we find that, you know, we're not getting very far. Yes. I was reading your article. It was in terms of how you were supposed to be able to sell the Constitution in the distance. It was one of three that you did. So I'm kind of curious. Of course. I appreciate that. And I'm also curious in terms of self-determination. The first thing I'm going to talk about is some of the job paper. And the consideration that the court gave to the request, which she had in prior instances. And I'm just going to give you a couple. It's not more. You can look in the ARC. It's volume one, passage of that case, volume two and volume one through 5-7-28. And the court gives due consideration to one of the issues, factors for a fair and just reason. And it appears from this record reference that all parties were agreed, including the court, that the fair and just reason standard did not have anything to do with the voluntariness of the plea. And I want you to understand something. In this court's decision, we were given oxygen at all, which decided to throw Walter, and we decided to throw Walter. There's a stress line in this grand decision that says, does the court view the fair and just reason standard essentially do more else than withdraw the plea because the plea was voluntary, not just self-determination? And that's what the court did here. The court listed certain factors like competency of counsel, readiness for the government, and the rate of release of the source of reasons. One of them was the fair and just reason standard. And it appears that it was essentially accusing itself, the government, of not doing this. It's a separate review of fair and just reason, which is a separate set of four boundaries. I think that is what this particular case is. So let's go to that. I don't know that we reached a final bar. I think that the question is, are all the houses, like the fair and just reason, are important and are not important enough? But the fair and just reason was that the plaintiffs to be dropped, the counts to be dropped, the lawyers to be dropped, premeditation to distinguish first degree murder from second degree murder, the government agreed that premeditation was off the table here. So this is kind of what we're going to do. So let's start off right here. If you were saying that they led me to believe that there was something more that I was going to do with my time, I'm all ears. But there's no reason to have an excuse. That's right. I don't think so. It's best recommendation. But I don't know why I would have to have a staggering decision. At this time, in this context, somebody expressed and said that the government couldn't bargain premeditation and said, well, what do I need to do? But you're not arguing that there's a staggering decision, are you? So, as part of the argument, what do you want to do? I think that is fair and I think it's likely to lead to a version of this. I thought I'd divorce myself of the argument. That's what she said. It's fairly simple. It's not as simple as you think. It's not as simple as you think it is. That's what she said. So, I understand that you were trying to say, well, but there are a lot of things that you can do. There are a lot of things that you can do. There are just reasons. Staggering is the lowering point. And the situation that we're in, that's what I was trying to say. There are just reasons. The city knows not that much. And I don't think that's the solution. I don't think that's a personal point of view. I don't want to believe that there was a range of that. I think it's necessary. I think it's necessary. I think it's necessary. So, I said, I think it's necessary. So, if you're saying that, well, well, there was a range. There was a range. And it's not as simple as a range. Because it's very simple. It's very simple. Pretty much because there's a range. It's not just months to a few weeks. It's a week. But, There's a difference. In the results. And then, you can go through. To cultural studies. For those who went to cultural studies. There are Goganeses. And so on and so on. We're talking here. About a matter of time. We're coming from briefs. All the way down. There are just reasons. It's not so simple. We understand that. If that's the case. Then I think the overall context. Of how this was materialized. The actual context. In which it arose. Is very, very important. We had a jury waiting. In the jury room. We made agreements. It was supposed to bring all of us together. It was a major, to a total superstition. That it had to come to a conclusion. That it was a judge. And then, you kind of rejected it. And then, you wanted to make it seem like. It was meant to be a judge. I mean, say that for a minute. So, you want the opposite. Of a judge. You got the best of both worlds. It's impossible. To choose. A judge. I think that's a good way to go. You have to do something about it. In the sense of, the community, and all the characters that the judges have in their sentences. You see, the government is supposed to be a huge part of it. It's something that needs to be done. But, it's not an open question. It's a public question. And that's something that has to be brought up in our legislative systems. Our systems. Because, we talked about it in other cases. But, it's too complicated. We have to sit in our legislative system for us to be able to hear what it is. You're right. And, what I'm trying to say is that respectfully, I think it's fair to indicate all these things. And, it's something that I realize. And now, with all the decisions that the government is making, we can now also speak unopeningly. You have to remember that you need hundreds of pages. Judge Loy went through all of the facts. Things like the keys, the cell phone. He did all of those things. He even gave you text messages and four explanations offered on this thing for each and every one of those things. And, the government comes in and doesn't say anything. It completely draws you in. And, there we end up now saying, what do you think you should be saying right now? Maybe, I don't know if you can hear what I'm saying. Maybe, because of COVID-19, we need to get this in my head somewhat. You're right. You're all in this together. But, they have to risk a Minnesota verdict. And, they only have after the fact. And, there is a particular condition in Minnesota that's frustrating. It's what has gone on in our history. And, it's also a situation of communication.  And, that's what I'm concerned about. Because, all I'm saying, Your Honor, is that these 40 years, that these 28 years, are a serious case. It's a pretty serious case. And, it's profoundly unfair to the government and establishment for messaging, raising the rating from very broad spectrum. Repeat the question again. Your Honor, it is of course crimes against citizens. I'll use the title of essence of what the statute does. And I alternatives are that this statute is in the constitutional municipality and the constitutional constitution is a must for the court. And there's no right to the necessary discrimination as a matter of the constitutional court in that case. Your Honor, I would just like to say that it seems to me that we are in a sphere in which our court is under a very very strict and very very strict. I understand why this is a concern so personally. It seems to me especially the statute that's responsible for this is clear. What's not clear is that there's a relationship between this right on the heels of this right. It seems to me that our constitutional system is not understanding the power of this right. So, reaching out to all of our constitutional society will go a second way. You do know that there are possibly even several cases where there is a pressure on the judicial court system to do that. And, it seems to me that there are cases where the constitutional system is not understanding  of the judicial court system. And, it seems to me that there is a pressure on the judicial court system to do that. And, it seems to me that there is a pressure on the judicial court   that. So, I think  we are in a very difficult position right now considering the constitutional system in the United States. So, I think that the judiciary is not in a very good position right now considering the constitutional system in the United States. So, I think we system  the United States. So, a very difficult position    constitutional system a very difficult position considering the constitutional system
judges: Fisher, Berzon, Watford